**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JESSICA ADAMS,

     Plaintiff,

v.

ALPHA CRUDE CONNECTOR, LLC;          No. 1:25-cv-00235-MIS-JFR
PLAINS ALL AMERICAN PIPELINE, LP, as
Successor in Interest to Alpha Crude Connector,
LLC; PLAINS ALL AMERICAN GP, LLC, as
Successor in Interest to Alpha Crude Connector,
LLC; PLAINS GP, LLC, as Successor in Interest
to Alpha Crude Connector, LLC; and PLAINS
PIPELINE, LP, as Successor in Interest to
Alpha Crude Connector, LLC,

     Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S MOTION TO REMAND**

THIS MATTER is before the Court on Plaintiff Jessica Adams' Motion to Remand ("Motion") filed on April 4, 2025. ECF No. 11. Defendant Plains All American Pipeline, LP ("Plains" or "Defendant") filed its Response on April 18, 2025.[1]  ECF No. 13. Plaintiff filed her Reply on May 1, 2025. ECF No. 14. Oral argument on the Motion was held January 23, 2026. ECF No. 18. The Motion is ripe for consideration. Upon review of the Parties' submissions, the record,

---

[1]     Plains avers that it is the "only properly named defendant" in this case. Resp. at 1, ECF No. 13. The events in question occurred in 2015 and 2016. First Am. Compl. at 5, ECF No. 1-1. Plains acquired Defendant Alpha Crude Connector, LLC ("ACC") in 2017, making Plains ACC's successor in interest. *Id.*; Second Notice of Removal ("Notice") at 4, ECF No. 1; *Successor in Interest*, *Black's Law Dictionary* (12th ed. 2024) ("A successor in interest retains the same rights as the original owner, with no change in substance."). Therefore the Court assumes ACC and the remaining Plains entities (i.e., Plains All American GP, LLC, Plains GP, LLC, and Plains Pipeline, LP) consent to Plains' arguments in favor of removal. *See Rios v. Lantz*, 402 F. Supp. 3d 1, 2 (D.P.R. 2019) (noting that although all defendants "must 'join' in the removal petition," joining "does not require that all defendants actually sign the petition . . . only that all defendants consent to removal . . . [by manifesting consent] clearly and unambiguously to the Court within the statutorily prescribed thirty days" (alterations and citations omitted)); *see also Brady v. Lovelace Health Plan*, 504 F. Supp. 2d 1170, 1173 (D.N.M. 2007) (noting the unanimity requirement is not imposed on "a nominal or formal party"). Some filings name ACC and Plains entities collectively as "Defendants," *e.g.*, First Am. Compl. at 1, ECF No. 1-1, but the Court will use the singular to refer to ACC and all Plains entities per Plains' assertion it is the only proper Defendant.

and the relevant law, the Court will GRANT IN PART and DENY IN PART Plaintiff's Motion.

## I.   RELEVANT BACKGROUND

Plaintiff's claims arose while she was employed by C3 Pipeline Services, LLC ("C3"). First Am. Compl. ¶ 14. Alpha Crude Connector, LLC ("ACC") hired C3 to lay pipeline on the Alpha Crude Connector pipeline transmission system in southeastern New Mexico. *Id.* Plains bought the pipeline, becoming ACC's successor in interest. *Id.* ¶ 13; *See* Notice at 4, ECF No. 1. Plaintiff alleges that members and managers of C3 sexually harassed her and "made it a condition of her employment with C3 that she perform sexual favors for them in order to keep her job." First Am. Compl. ¶ 14. Plaintiff filed her complaint against Defendant under a theory of liability based on members and managers of C3 "acting during and within the course and scope of their employment with C3 and within the course and scope of C3 Pipeline Services's employment with [ACC]." *Id.*

Plaintiff filed her original complaint in New Mexico state district court in 2018. *See* Mot. at 2; ECF No. 8-1 at 1. The case was timely removed. ECF No. 8-1 at 113. In 2021 the District of New Mexico remanded following the Tenth Circuit Court of Appeals' affirmance of summary judgment in *Adams v. C3 Pipeline Construction, Inc.*, 30 F.4th 943 (10th Cir. 2021). *See* ECF No. 8-1 at 101-03. Plaintiff filed the operative First Amended Complaint for New Mexico Common Law Premises Liability ("First Amended Complaint") in New Mexico state district court in October, 2022. ECF No. 1-1 at 1. The First Amended Complaint asserts premises liability (Count I) and gross negligence (Count II) claims against Defendant under New Mexico state law. *Id.* ¶¶ 26-40.

Defendant removed this case in March, 2025. Notice, ECF No. 1. Defendant claims it could not ascertain federal jurisdiction until February 24, 2025, when Plaintiff supplied the following

supplemental answer and admissions to proffered discovery:

**INTERROGATORY NO. 37:**      Identify each and every federal regulation, including without limitation, any regulations of the United States Department of Interior (BLM) that you contend support or evidence any agency relationship between Frontier Energy Partners, LLC and Renegade Gas Services, LLC, C3 Pipeline Services, LLC, or C3 Pipeline Construction Inc. in connection with The ACC, stating for each such regulation: (a) the regulation or statute number; (b) how such regulation or statute created an agency relationship with respect the ACC; and (c) when such statute or regulation first created an agency relationship on The ACC by or between Frontier Energy Partners, LLC and Renegade Gas Services, LLC, C3 Pipeline Services, LLC, or C3 Pipeline Construction Inc.

**ANSWER:  Plaintiff objects to this interrogatory pursuant to NM R Civ. P. 1-033 because Defendant has served more 50 interrogatories, including subparts. Although this interrogatory is nominally referred to as Number 37, this number and the numbers assigned to Defendant's previous interrogatories do not account for discreet subparts. Plaintiff also objects to this interrogatory as not being reasonably calculated to lead to the discovery of relevant evidence. Plaintiff contends there was an agency relationship between Frontier Energy Partners, LLC and the entities referenced herein. With respect to Defendant ACC, there are BLM regulations that Plaintiff will argue evidence an agency relationship between Frontier Energy Partners, LLC and Renegade Gas Services, LLC once ACC applied for easements from the federal government, including 43 C.F.R. 2807.12, which provides that ACC is strictly liable for all injuries occurring on the property ACC acquired from the federal government, and 43 C.F.R. 2805.14, which states that anyone using the property ACC acquired from the federal government is ACC's agent.**

**REQUEST NO. 184:** Admit that Plaintiff Jessica Adams contends in this lawsuit that Renegade Gas Services, LLC was acting as the agent of Frontier Energy Partners, LLC with regards to The ACC pursuant to the Endangered Species Act, 16 U.S.C. § 1531 et seq. (1973).

**RESPONSE: Admit.**

**REQUEST NO. 185:** Admit that Plaintiff Jessica Adams contends in this lawsuit that Renegade Gas Services, LLC was acting as the agent of Frontier Energy Partners, LLC with regards to The ACC pursuant to the federal laws of the United States.

**RESPONSE: Admit.**

Notice at 1, 6-7; ECF No. 1-4 at 4; ECF No. 1-5 at 2. Defendant contends these responses

recognizing federal law create federal jurisdiction via (1) substantial federal question jurisdiction

and (2) federal enclave jurisdiction. Notice, at 8-15, ECF No. 1; *see also* Resp. at 10-25, ECF No. 13.[2]

Plaintiff filed the instant Motion to Remand asserting removal was untimely and Defendant did not meet its burden to establish federal jurisdiction. ECF No. 11 at 10-21. Plaintiff seeks attorney's fees and costs associated with removal. *Id.* at 21-22; *see also* Reply at 12, ECF No. 14. In Response, Defendant argues removal was timely because the basis of jurisdiction only became "clear and unequivocal" in February 2025, when Plaintiff submitted her responses to discovery. ECF No. 13 at 8-10. Defendant claims Plaintiff's responses implicate substantial federal questions because Plaintiff planned to "rely on BLM regulations to establish agency relationships between ACC and [independent contractors] . . . ." *Id.* at 10. Defendant also claims Plaintiff's response establishes federal jurisdiction through her premises liability claim because the alleged acts occurred on a federal enclave. *Id.* at 5-8.

Plaintiff emphasizes that her common law direct premises liability claim does not implicate a substantial federal question to confer jurisdiction on this Court and Defendant has not met its burden to establish enclave jurisdiction. Reply at 4-9, ECF No. 14.

The Court held a hearing on the Motion on January 23, 2026. *See* Clerk's Min. for Mot. Hr'g of Jan. 23, 2026, ECF No. 18. At the hearing, Plaintiff argued the first, third, and fourth factors in *Gunn v. Minton*, 568 U.S. 251 (2013) favor remand, including the strong state interest in developing premises liability law. Clerk's Min. for Mot. Hr'g of Jan. 23, 2026 at 1, ECF No. 18. Defendant argued that any attempt by Plaintiff to use the Endangered Species Act to impose strict liability subjects the case to federal jurisdiction and the best way forward is for the Plaintiff

---

[2] The page numbers appearing at the bottom of the pages of Defendant's Response are incorrect. The second page is numbered "1" and so on. The Court uses the page numbers generated by the Court's Electronic Document Filing System.

to disclaim use of federal laws and regulations to impose liability. *Id.* The Court asked the Plaintiff if she planned to pursue liability or strict liability using federal laws or regulations in state court. Tr. of Hr'g of Jan. 23, 2026 at 41:18-25, ECF No. 21. Plaintiff said she would if the facts permitted. *Id.*

The Court grants the Motion to the extent it seeks remand but denies Plaintiff's request for attorney's fees and costs.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks and citation omitted).

### A. Timeliness of Removal

"The right to remove a case to federal court is determined from allegations set forth in the initial pleading, 'or *other paper* from which it may first be *ascertained* that the case is one which is or has become removable.'" *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035 (10th Cir. 1998) (quoting 28 U.S.C. § 1446(b)). Removability must be "clear and unequivocal" from the pleading or other paper to trigger the 30-day deadline for defendant's removal of a civil action. *Id.* at 1035-36; 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."). Under 28 U.S.C. § 1446(b), the removal period does not begin until the defendant is able to "intelligently ascertain

removability so that in his petition for removal he can make a simple and short statement of facts." *DeBry v. Transamerica Corp.*, 601 F.2d 480, 489 (10th Cir. 1979).

### B. Federal Question Jurisdiction

Federal courts have original jurisdiction in "federal question cases; that is, those cases arising under the Constitution, laws, or treaties of the United States." *Salzer*, 762 F.3d at 1134 (internal quotation marks and citation omitted). Courts are generally guided by the "well-pleaded complaint rule" in determining whether federal question jurisdiction exists. *Id.* (internal quotation marks and citation omitted). Where no federal cause of action is pled, the presence of a federal issue in a case is not sufficient to confer federal question jurisdiction; rather, the federal issue must be one that is "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1233 (10th Cir. 2006) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

Where state law creates a plaintiff's cause of action, the case may still "arise under" the laws of the United States if a well-pleaded complaint establishes that relief under state law requires resolution of a substantial question of federal law in dispute between the parties. *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1257 (10th Cir. 2022). The relevant question therefore is "'does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Id.* (quoting *Grable*, 545 U.S. at 314). An issue is "necessarily raised" when it is an "'essential element' of a plaintiff's claims." *Id.* at 1266 (citation omitted). The "mere need to apply federal law in a state-law claim" does not trigger the "narrow" substantial question branch of a federal question

6

jurisdiction inquiry. *Id.* at 1257 (internal quotation marks and citations omitted).

## C. Endangered Species Act Liability

"Proximate cause and foreseeability are required to affix liability for ESA violations." *Aransas Project v. Shaw*, 775 F.3d 641, 656 (5th Cir. 2014). "In the course of holding that 'harm' under the ESA validly includes 'significant habitat modification or degradation that actually kills or injures wildlife,' 50 C.F.R. § 17.3 (1994), the Supreme Court squarely rejected the dissenters' assertions that a form of strict liability, unlimited by causal connection, could be imposed." *Id.* at 656-57 (citing *Babbit v. Sweet Home Chapter of Cmtys. for Greater Or.*, 515 U.S. 687, 690–708 (Stevens, J., majority), 714–735 (Scalia, J., dissenting) (1995)).

## D. Federal Enclave Jurisdiction

"Personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction." *Akin*, 156 F.3d at 1034. "The doctrine of federal enclave jurisdiction generally requires 'that *all* pertinent events t[ake] place on a federal enclave.'" *Bd. of Cnty. Comm'rs of Boulder Cnty.*, 25 F.4th at 1271 (citation omitted).

## E. Award of Attorney's Fees Incurred Due to Removal

A federal court remanding a removed case to state court for lack of subject matter jurisdiction "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

## III. DISCUSSION

Without so finding, the Court assumes removal was timely because Defendant filed its Petition nine days after Plaintiff filed the supplement to discovery that Defendant contends was clear and unequivocal notice to trigger the 30-day removal deadline. *See* Notice at 6-7; *Akin*, 156

F.3d at 1036 (requiring "clear and unequivocal" notice of removability from the pleading or other paper to trigger the 30-day deadline for the removal by a defendant of a civil action); *see also Cruse v. St. Vincent Hosp.*, Civ. No. 10-1140 JP/RHS, 2011 WL 13289797, at *4-5 (D.N.M. Apr. 11, 2011) ("Assuming *arguendo*" the other paper defendant relied on for its second removal provided clear and unequivocal notice of removability in order to address the merits of the parties' remand arguments).

Since (1) Plaintiff's state theory of liability does not rest on an agency relationship and, even if it did, Defendant has not shown the federal regulations in question necessarily raise a substantial question of federal law, (2) the Endangered Species Act and BLM regulations which Defendant argues require federal jurisdiction should Plaintiff invoke them cannot support a finding of liability or agency and therefore cannot give rise to federal jurisdiction, and (3) Defendant has not established the premises in question are a federal enclave, the Court grants Plaintiff's Motion on the merits finding a lack of federal jurisdiction and remands to state court. *See Cruse*, 2011 WL 13289797, at *4-5. The Court, however, denies the Motion as to attorney's fees and costs.

**A. There is no federal question jurisdiction because Plaintiff does not need to establish an agency relationship to establish premises liability under New Mexico law and, if she did, establishing an agency relationship does not necessarily raise a substantial issue of federal law.**

Defendant removed this case following Plaintiff's February 24, 2025, discovery answers and admissions that Defendant contends unequivocally demonstrate federal jurisdiction via a substantial question of federal law. Notice at 6, ECF No. 1; ECF Nos. 1-4, 1-5. Plaintiff moved to remand the case back to state court asserting (1) her three discovery answers "do not raise any substantial issues of federal law;" (2) her state common law claim of premises liability "does not

8

depend on any federal question" and (3) the "mere acknowledgement that there are federal authorities supporting Defendant ACC's agency relationship with third parties" is insufficient to support federal question jurisdiction. Mot. at 8-9, 11, 16, ECF No. 11; Reply at 4-7, ECF No. 14. In its Response, Defendant maintains Plaintiff must establish an agency relationship between ACC and C3 to succeed on her premises liability claim and argues Plaintiff can do so only through federal law. ECF No. 13 at 11-14.

**(1)** ***An agency relationship is not required to establish premises liability under New Mexico state law.***

Whether or not Plaintiff must prove an agency relationship between ACC and C3 depends on whether a premises liability claim under New Mexico law requires an agency relationship between hiring employers, like ACC, and independent contractors, like C3. If New Mexico law does require such an agency relationship, then the Court must determine whether establishing an agency relationship here necessarily raises a substantial federal question. The Court finds that New Mexico law does not require an agency relationship between hiring employers and independent contractors to establish premises liability. As Plaintiff can establish liability without relying on an agency relationship, and because Defendant's federal question argument rests on Plaintiff's need to establish an agency relationship, the Court finds there is no federal question jurisdiction.

In New Mexico, a direct premises liability claim is informed by the Restatement (Third) of Torts. *See Lopez v. Devon Energy Prod. Co., L.P.*, 468 P.3d 887, 895 (N.M. Ct. App. 2020), *cert. denied*, (No. S-1-SC-38161, Apr. 28, 2020). A general duty of care is imposed on the landowner or possessor of the premises on which a tort occurs, including those landowners and possessors of land, like ACC, who are employers of contractors, like C3. *Id.* at 894, 896 ("Put simply, if the land posed a danger to visitors, Defendant owed a duty of care."); *but cf. Dean v. United States*, No.

9

24-2073, 2025 WL 829123, at *4 (10th Cir. Mar. 17, 2025) (declining to apply *Lopez* despite acknowledging "the adoption of duty framework in the Restatement (Third) of Torts § 7 (2012) . . . changed the way [the New Mexico Supreme Court] analyzes a defendant's duty of care" because (i) "[*Lopez*] fails to persuade [the court] that New Mexico's highest court would refuse to apply the independent contractor rule,"[3] (ii) *Lopez* both predates and provides no reason to depart from *Adams* (which asserted New Mexico continues to adhere to the independent contractor rule),[4] and (iii) *Lopez* "is factually distinguishable from [*Dean*]"). The employer of a contractor "has a duty of reasonable care to protect persons on the premises from unreasonably dangerous conditions, including employees of those contractors." *Hinger v. Parker & Parsley Petrol. Co.*, 902 P.2d 1033, 1042 (N.M. Ct. App. 1995).

As a matter of law, New Mexico courts determine the existence and scope of a duty by analyzing "the relationship of the parties, the plaintiff's injured interests and the defendant's conduct to determine whether the plaintiff's interests are entitled to protection." *Waterbury v. Nelson*, 557 P.3d 96, 100 (N.M. 2024) (internal quotation marks and citation omitted); *see also*

---

[3] The independent contractor rule is from the Restatement (Second) of Torts, Chapter 15: "(subject to numerous exceptions) 'the employer of an independent contractor is not liable for physical harm caused to another person by an act or omission of the contractor or his servants.'" Marc M. Schneier, *General Contractor's or Subcontractor's Liability Under Restatement Third, Torts: Liability for Physical and Emotional Harm, for Injuries to Employees of Other Contractors on Project*, 14 A.L.R.7th Art. 1 (2016) (quoting Restatement (Second) of Torts § 409 (1965)). Liability therefore depends on the degree of control retained by the employer over the independent contractor. *See* Restatement (Second) of Torts § 414. "In contrast, the Restatement (Third) of Torts begins with the imposition of a general duty of care and then crafts limitations based on 'considerations of policy and principle that warrant limiting the duty of care owed by the hirer.'" *Lopez*, 468 P.3d at 894 (quoting the Restatement (Third) of Torts § 55 cmt. a. (2012))

[4] The *Adams* court stated that "the employer of an independent contractor [generally] is not liable for injuries to an employee of the independent contract" for premises liability in New Mexico. 30 F.4th at 972-73 (quoting *Valdez v. Cillessen & Son, Inc.*, 734 P.2d 1258, 1262 (N.M. 1987)). Although the government in *Dean* argued that "*Adams* is dispositive on the continuing viability of the independent contractor rule in New Mexico in the premises liability context," 2025 WL 829123, at *3, the *Dean* court declined to hold itself to *Adams*, noting that "the statements about the independent contractor rule in *Adams* were made in passing, and the ultimate issue in that case was whether to allow amendment to the plaintiff's complaint, not whether summary judgment was appropriate on a premises liability claim under a specific set of facts," *id.* at *4. The Court notes the *Valdez* case quoted by *Adams* predated the Restatement (Third) of Torts by 35 years.

*Hovey-Jaramillo v. Liberty Mut. Ins.*, 535 P.3d 747, 752 (N.M. Ct. App. 2023) ("The duty of ordinary care applies unless the owner/occupier can establish a policy reason, unrelated to foreseeability considerations, that compels a limitation on the duty or an exemption from the duty to exercise ordinary care.") (internal quotation marks and citation omitted).

Thus, for Plaintiff to succeed on her premises liability claim she must establish as a matter of law Defendant had a duty of ordinary care over the premises. *See Lopez*, 468 P.3d at 893-97 (holding that framing the duty of employers of independent contractors as exceptions to a general rule of non-liability was improper because the hiring employer had direct duties of general care under premises liability principles); *see also* Schneier ("To sum up, the Third Restatement imposes upon the hirer of an independent contractor a duty to exercise reasonable care as defined in the Restatement Third, Torts: Liability for Physical and Emotional Harm § 7, where the hirer's own negligence is a factual cause of the harm within the scope of liability.").

Defendant incorrectly insists that Plaintiff's premises liability claim requires she establish an agency relationship between ACC and C3. Notice at 4, ECF No. 1 ("In order to prove her state law premises liability claims, Plaintiff must establish an agency relationship between Defendant ACC and non-parties . . . ."); Resp. at 2, ECF No. 13 ("If Plaintiff cannot prove that the non-parties on the premises whom she alleges failed her in various ways were agents of ACC . . . then her claims fail as a matter of law."). This is not the standard in the Restatement (Third) of Torts or in New Mexico.

The Court finds a direct premises liability claim in New Mexico does not require Plaintiff establish an agency relationship between ACC and C3 to establish liability for claims brought by Plaintiff under a theory of premises liability. In the absence of an agency requirement, whether ACC's supposed agency relationship with C3 relied on federal law is immaterial. Therefore, no

11

substantial question of federal law is raised, meaning there is no federal question jurisdiction and the case shall be remanded accordingly.

**(2)** ***Even if an agency relationship is required to establish premises liability in under New Mexico state law, Defendant does not necessarily raise a substantial question of federal law.***

Even if, however, *Adams* and *Dean* are correct that the New Mexico Supreme Court still adheres to the independent contractor rule, *see* 30 F.4th at 972-74; *Dean*, 2025 WL 829123, at *4, and would require an agency relationship between hiring employers and independent contractors to establish premises liability here, Defendant has made no argument that necessarily raises a substantial federal question. *See Grable*, 545 U.S. at 314.

A necessarily raised issue is one which is essential to the claim. *See id.* at 315. *Gilmore v. Weatherford* is instructive. 694 F.3d 1160 (10th Cir. 2012). In *Gilmore*, a state conversion claim rested on whether the Secretary of the Interior approved removal of mine tailings, as required by federal law. *Id.* at 1173. The *only* way to succeed on the state conversion claim was to show "the Secretary's advance approval is required under federal law and that this claimed right is among those recognized under Oklahoma personal property law." *Id.*

Defendant insists "Plaintiff cannot prove under New Mexico state law that ACC had control over C3's employees or specific control over the premises" and therefore her only recourse is to tie Defendant to an independent contractor, which turns *only* on "whether the federal regulations state every independent contractor of ACC is its agent as a matter of law." Resp. at 17, ECF No. 13. If Defendant were correct, this case would be like *Gilmore*. But Defendant is not correct.

12

Instead, Plaintiff claims, and the Court agrees, Plaintiff can rely on New Mexico statutes and cases to establish agency.[5] Mot. at 15, ECF No. 11 ("Adams' agency theories do not succeed or fail based on [BLM regulations] . . . Adams' state premises liability claim is obviously not contingent upon statutes relating to endangered species under the ESA . . . [and] state authorities fully support Adams' agency assertions.") (citing to N.M. R. Civ. UJI 13-401 Agent; principal; definition ("An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation."); N.M. R. Civ. UJI 13-402 Liability of Principal; *Chevron Oil Co. v. Sutton*, 515 P.2d 1283, 1285 (N.M. 1973) ("[T]he manner in which the parties designate a relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of the other, notwithstanding he is not so called.")); Reply at 6, ECF No. 14 ("[T]here are multiple avenues of proving agency under [New Mexico state] common law."). Furthermore, Plaintiff points to evidence entirely outside of federal regulations she can use to attempt to establish agency. Reply at 3, ECF No. 14 ("Adams has already marshaled evidence in state district court of the agency relationship at issue, including by introducing testimony from those agents: in his deposition, Frontier Energy Services Vice President Kenneth Benton testified that the inspectors were the 'boots on the ground' and the 'eyes and ears' of Defendant ACC at the pipeline.")

Since Plaintiff can establish agency under state law, what constitutes agency under federal law is not essential to her claim. The Court finds no issue of federal law bearing on an agency

---

[5]      The Parties also disagree as to what type of liability claim Plaintiff brought. Defendant insists Plaintiff brought a strict or vicarious liability claim and thus must establish agency to establish liability. Notice at 4, 5, 9, 11, 13 ECF No. 1; Reply at 19-20, 25, ECF No. 13. Plaintiff asserts she brought a direct liability claim under New Mexico premises liability law, which does not rely on agency but rather on "broad duty and negligence principles." *See* Mot. at 14, ECF No. 11. Plaintiff acknowledges there is a question of agency, but asserts it is limited to proving "Defendants' breach of their duty of care based on known and foreseeable harm." Mot. at 14-15, ECF No. 11.

relationship between ACC and its subcontractors is "necessarily raised" and therefore the Court does not have federal question jurisdiction. *See Bd. of Cnty. Comm'rs of Boulder Cnty.*, 25 F.4th at 1266.

**B. Plaintiff cannot seek strict liability or establish an agency relationship under the Endangered Species Act or BLM Regulations. Therefore no question of federal law is raised and no federal jurisdiction exists.**

During the hearing held on January 23, 2026, Defendant repeatedly claimed that Plaintiff would use the Endangered Species Act (ESA), 16 U.S.C. § 1504(c) and (g), and Bureau of Land Management (BLM) regulations, 43 C.F.R. §§ 2807.12 and 2805.14, to assert strict liability under federal law at the state level for the purpose of her state court claim and to establish agency. *See e.g.*, Tr. of Hr'g of Jan. 23, 2026 at 27:16-20, 28:7-11, 31:8-10, 31:24 – 32:25, 33:1-10, ECF No. 21. Defendant had previously asserted these claims in the Notice of Removal, ECF No. 1 at 8 ("Plaintiff's underlying theory of liability is premised expressly and exclusively on Plaintiff's agency theory that the Endangered Species Act (ESA), 16 U.S.C. § 1531 et seq., and certain Bureau of Land Management (BLM) regulations, impose liability upon ACC for the state law torts Plaintiff alleges were committed by non-party tortfeasors C3 Pipeline Services, LLC . . ."), and its Response to the Motion to Remand, ECF No. 13 at 16. Defendant also argues the Court is obligated to assert jurisdiction over any action "arising under" the ESA and argued that this case arises under the ESA based on Plaintiff's interrogatory responses. *Id.* at 29:24 – 30:19 ("The Endangered Species Act itself creates jurisdiction . . .").

When asked by the Court whether Plaintiff planned to seek strict liability under federal laws or regulations, Plaintiff replied "If the facts play out and support[] an imposition of strict liability, then, yes, we would." Tr. of Hr'g of Jan. 23, 2026 at 41:18-25, ECF No. 21.

14

The Court cannot conceive why Plaintiff continues to adhere to a position without foundation, particularly when it might support removal, but Defendant's concerns are meritless. There is no possibility of strict liability under federal law for Plaintiff's claims, nor can she establish agency under these laws and regulations, nor is the Court obligated to assert jurisdiction under the ESA.

The ESA does not impose strict liability at all, let alone here, and BLM regulation 43 C.F.R. § 2807.12 clearly imposes only normal liability under federal law—not strict liability and not liability under state law. The Court would have jurisdiction under the ESA if this case arose under it, but it does not. Nor, finally, does BLM regulation 43 C.F.R. 2805.14 create an agency relationship between ACC and C3; the regulations merely permit a grant-holder like ACC to allow others, like C3, to act as their agent.

That Plaintiff may attempt to prove agency at the state level through C3's adherence to federal laws and regulations on behalf of ACC does not raise a federal question or create federal jurisdiction, *see supra* III.A.2.

**(1) *The ESA does not impose strict liability.***

Defendant repeatedly claimed at the January 23, 2026, hearing that Plaintiff would attempt to use the ESA to impose strict liability on Defendant if given the opportunity in state court. *See e.g.*, Tr. of Hr'g of Jan. 23, 2026 at 36:20-22, ECF No. 21 ("The Plaintiff has asked either this Court or the state court to impose strict liability on my client on the basis of the Endangered Species Act"). And Plaintiff, when asked by the Court if she would "seek to impose liability, strict or otherwise, pursuant to any federal law, the Endangered Species Act or otherwise?" replied "If the facts play out and support[] an imposition of strict liability, then, yes, we would." *Id.* at 41:18-23.

The Court then followed up, asking "Under the Endangered Species Act?" and Plaintiff replied, "Right." *Id.* at 41:24-25.

But Plaintiff provides no coherent argument. And she cannot, because strict liability under the ESA is not possible. First, there is no strict liability under the Endangered Species Act. *See Sweet Home*, 515 U.S. at 699-701 (discussing foreseeability); *Shaw*, 775 F.3d at 656. Nowhere in the Act itself do the words "strict," "liable," or "liability" appear, *see generally* 16 U.S.C. §§ 1531-44, and the Supreme Court has made it clear that "Congress had in mind foreseeable rather than merely accidental effects on listed species" when it imposed statutory requirements on persons and entities subject to the ESA, *see Sweet Home*, 515 U.S. at 700-01.

Even if this case did, in fact, arise under the ESA, as Defendant also incorrectly claims, Tr. of Hr'g of Jan. 23, 2026 at 29:24 – 30:15, ECF No. 21, Plaintiff would have to prove liability through proximate cause. *See Shaw*, 775 F.3d at 657-58 ("Applying a proximate cause limit to the ESA must therefore mean that liability may be based neither on the 'butterfly effect' nor on remote actors in a vast and complex ecosystem."). As the Endangered Species Act is not a strict liability regime, Plaintiff cannot attempt to use it at the state level to impose strict liability and, therefore, the Court does not have federal jurisdiction on that basis.

**(2)** *This case does not arise under the ESA.*

The ESA grants district courts of the United States "jurisdiction over any actions arising under this chapter." 16 U.S.C. § 1540(c). Section 1540(g), which covers "Citizen suits" under the ESA, states "district courts shall have jurisdiction, without regard to the amount in controversy of the citizenship of parties, to enforce any such provision or regulation, or to order the Secretary to perform such act or duty, as the case may be." *Id.* § 1540(g)(1). Defendant asserts that this Court has jurisdiction "under 1540(c) and 1540(g) of the Endangered Species Act . . . to enforce the

16

provisions and regulations of the Endangered Species Act." Tr. of Hr'g of Jan. 23, 2026 at 37:15-21, ECF No. 21. This case does not arise under the ESA nor is it a citizen suit. Defendant is incorrect.

First, 16 U.S.C. § 1540(g) applies to "Citizen suits" under the ESA. This is not a citizen suit under the ESA. A citizen suit is brought against a person or entity by a person or entity alleging a violation of the ESA. *E.g., Ctr. for Biological Diversity v. Norton*, 262 F.3d 1077, 1078 (10th Cir. 2001) (seeking injunctive relief requiring the Secretary of the Interior to take final agency action listing the Arkansas River shiner, a type of small fish found in the Canadian River in New Mexico, Oklahoma, and Texas, as an endangered or threatened species). This is not a citizen suit and § 1540(g) does not apply. This Court has no jurisdiction under § 1540(g).

Second, 16 U.S.C. § 1540(c) does indeed grant district courts jurisdiction for "any actions arising under [the ESA]." But this action does not arise under the ESA. Plaintiff has filed a state premises liability claim, not a federal ESA claim. And nothing in this suit, seeking liability for alleged sexual harassment and quid pro quo sexual demands, resembles an action arising under the ESA. The ESA prohibits actions like importing, selling, or taking (meaning to harass, harm, etc.) endangered species of plants, fish, or wildlife "listed pursuant to section 1533." *See* 16 U.S.C. § 1538(a); 16 U.S.C. § 1532(19). The only link between this suit and the ESA is that Plaintiff alleges certain acts were taken by entities subject to the ESA. By Defendant's logic, any act undertaken by any party subject to the ESA would subject that party to federal jurisdiction. That cannot be, and is not, the law. And while Plaintiff's answers to the Court's question indicate she is anxious not to cut herself off from any available pathway to find liability, the ESA is not available to her to impose liability here under any possible construction.

**(3)** *Strict liability is not available under BLM regulations and therefore cannot create federal jurisdiction. And BLM regulations only permit a grant-holder to allow others to act as their agent, they do not create an obligatory agency relationship.*

BLM Regulation 43 C.F.R. § 2807.12(a) declares that "[i]f you hold a grant, you are liable to the United States and to third parties for any damage or injury they incur in connection with your use and occupancy of the right-of-way." BLM regulation 43 C.F.R. § 2805.14(c) declares that holders of grants are conveyed the right to "[a]llow others to use the land as your agent in the exercise of the rights that the grant specifies."

Defendant argues that Plaintiff plans to use these regulations to establish agency and impose strict liability on Defendant. Tr. of Hr'g of Jan. 23, 2026 at 32:12-14, ECF No. 21 ("[T]he 2805.114 [sic] regulation is one about agency, and it is to create agency between those who use the property and those who hold the lease from the BLM."); Tr. of Hr'g of Jan. 23, 2026 at 27:16-201, ECF No. 21 ("[The admissions] are the very basis of why the Plaintiff[] in this case seek[s] to impose not only liability but strict liability, because strict liability – and I'll go through the BLM regulations – arises out of that BLM regulation, according to the Plaintiff.").

Plaintiff indeed stated in her interrogatory response that 43 C.F.R. § 2807.12 provides "that ACC is strictly liable for all injuries occurring on the property" and 43 C.F.R. § 2805.14 "states that anyone using the property ACC acquired from the federal government is ACC's agent." ECF No. 1-1 at 4; *see also* Tr. of Hr'g of Jan. 23, 2026 at 12:17 – 13:1, ECF No. 21. And, when asked by the court whether Plaintiff will seek to use a federal law to seek strict liability, Plaintiff answered she would. *Id.* at 41:18-23. But Plaintiff's arguments are meritless. Strict liability is not

available to third parties under BLM regulations and the regulations do not create an agency relationship.

(a) *BLM Regulation 43 C.F.R. § 2807.12 does not impose strict liability, it merely imposes general liability under federal law.*

BLM Regulation 43 C.F.R. § 2807.12: "If I hold a grant, for what am I liable?" does impose liability on grant-holders. But reading the section as a whole, it is clear that the liability under federal regulatory law imposed in § 2807.12(a) is general liability, not strict liability.

Section 2807.12(a) alerts grant-holders they are "liable to the United States and to third parties for any damage or injury they incur in connection with your use and occupancy of the right-of-way." 43 C.F.R. § 2807.12(a). By contrast, § 2807.12(b) alerts grant-holders they "are *strictly liable* for any activity or facility associated with your right-of-way area which BLM determines presents a foreseeable hazard or risk of damage or injury to the United States." *Id.* § 2807.12(b) (emphasis added). If § 2807.12(a) imposes strict liability it would say so, as § 2807.12(b) does. It does not. Furthermore, strict liability is not available under 43 C.F.R. § 2807.12 to third parties; it is only available to the United States. *Id.* § 2807.12(b).

As to third parties, a grant-holder is normally liable for injuries to third parties for damage or injury in connection with the use and occupancy of the right of way, as one would expect. *Id.* § 2807.12(a). Plaintiff and Defendant do not, and cannot, point to any case law interpreting this regulation otherwise. Apparently, the only case addressing this regulation is *Kubanyi v. Golden Valley Electrical Ass'n*, which mentions 43 C.F.R. § 2807.12 regulation only in a footnote and only in relation to a § 1983 claim. No. 4:04-0026 CV (RRB), 2006 WL 8431056, at *4 n.48 (D. Alaska Nov. 15, 2006). Federal jurisdiction is not available here under 43 C.F.R. § 2807.12(a).

19

(b) *BLM Regulation 43 C.F.R. § 2805.14 only permits a grant-holder to allow others to act as their agent, it does not declare an agency relationship between ACC and C3.*

BLM regulation 43 C.F.R. § 2805.14: "What rights does a right-of-way grant or lease convey?" lists those rights conveyed to grant holders like ACC. Section 2805.14 introduces all subsections by the sentence "Rights which the grant conveys to you include the right to:" 43 C.F.R. § 2805.14. A "right" under Black's Law Dictionary has several potentially applicable definitions here: "2. Something that is due to a person by just claim, legal guarantee, or moral principle;" "3. A power, privilege, or immunity secured to a person by law;" "4. A legally enforceable claim that another will or will not do a given act; a recognized and protected interest the violation of which is a wrong;" and "5. (*often pl.*) The interest, claim, or ownership that one has in tangible or intangible property." *Right*, *Black's Law Dictionary* (12th ed. 2024). As indicated by the definitions, the § 2805.14 subsections are rights which the holder of the grant can exercise or not exercise.

The subsections themselves bear this out, with several allowing a grant-holder the right to do something, like "Use the described lands to construct, operate, maintain, and terminate facilities . . ." or "Assign the grant to another . . ." 43 C.F.R. §§ 2805.14(a), (f). These are optional rights which the grant-holder can exercise or not exercise at their discretion. Subsection 2805.14(c) conveys the right to "Allow others to use the land as your agent in the exercise of the rights that the grant specifies." 43 C.F.R. § 2805.14(c).

There is a separate section, 43 C.F.R. § 2805.12: "With what terms and conditions must I comply?," listing the obligations of grant holders. For example, each grant-holder "must" "Rebuild and repair roads . . . destroyed or damaged by the project" and "Do everything reasonable to

20

prevent and suppress wildfires on or adjacent to the right-of-way." 43 C.F.R. §§ 2805.12(a)(2), (4). These are requirements and are not optional.

Read within the context of the entire regulation, therefore, § 2805.14(a) gives the grant-holder the right, not the obligation, to "*allow* others to use the land as your agent . . ." if the grant-holder so chooses. 43 C.F.R. § 2805.14(a) (emphasis added). It does not say that anyone using the land is the agent of the grant-holder.

Therefore, Plaintiff is wrong that 43 C.F.R. § 2805.14 "states that anyone using the property ACC acquired from the Federal Government is ACC's agent." ECF No. 1-1 at 4; Tr. of Hr'g of Jan. 23, 2026 at 12:24 – 13:1, ECF No. 21. Defendant's concern, expressed in the hearing and reasonably based on Plaintiff's meritless interrogatory response, is unfounded. *See id.* at 32:12-14. It is true that a party might use 43 C.F.R. § 2805.14(a) to show that a grant-holder has the right to allow others to act as their agent and was doing so, but it remains for a party to prove that the party was in fact an agent. That a federal regulation permitted ACC to allow C3 to act as their agent has no bearing on Plaintiff's state law premises liability claim. BLM regulation 43 C.F.R. § 2805.14(a) does not create federal jurisdiction.

**(4) *Plaintiff cannot pursue strict liability or liability under federal law for her state claim and no federal jurisdiction exists here based on the Endangered Species Act or BLM regulations.***

In summary, Defendant's concerns, aired at the hearing on January 23, 2026, and based on Plaintiff's incorrect interrogatory responses and Plaintiff's baseless positions at the hearing, are unfounded. As is Defendant's argument that this Court must assert jurisdiction because of the obligations imposed on it through the ESA and BLM regulations. Plaintiff has no avenues to pursue strict liability through federal law and no avenue to pursue liability through federal law

except through a federal claim—which she does not have. Nor can Plaintiff use BLM regulations to prove an agency relationship.[6]

At most, Plaintiff could attempt to show an agency relationship through C3's adherence to federal law and regulations on ACC's behalf, but that agency relationship must be satisfied under state law to establish her state claim, *see supra* III.A.2.

**C. Defendant has not met its burden to establish federal enclave jurisdiction, nor is the land in question a federal enclave.**

In its Notice, Defendant argues that Plaintiff's "amended interrogatory answer unequivocally revealed for the first time that Plaintiff was alleging she sustained her injuries **on** the leased BLM federal enclave land," establishing federal enclave jurisdiction. ECF No. 1 at 13. The Court again assumes without deciding that Plaintiff's discovery answer provided clear and unequivocal notice of removability, resulting in timely removal, and addresses the merits of the Parties' federal enclave jurisdiction arguments. *See Cruse*, 2011 WL 13289797, at *4-5.

In support of federal enclave jurisdiction, Defendant submits an Inventory Report on Jurisdictional Status of Federal Areas Within the States As of June 30, 1962 ("Report"), compiled by the General Services Administration.[7] ECF No. 1-10. Defendant claims the Report establishes "BLM holdings in Lea and Eddy County, as well as the Jornada Range"—near or where the pipeline was being built—is recognized federal enclave land. Notice at 12, ECF No. 1 ("[S]ince at least the June 30, 1962 Inventory Report on Jurisdictional Status of Federal Areas Within the

---

[6] The Court is perplexed at Plaintiff's insistence at the Hearing she would pursue liability under federal laws and regulations when (1) basic research refutes her ability to do so and (2) Defendant based removal partially on her supposed pursuit of liability under federal laws and regulations. Tr. of Hr'g of Jan. 23, 2026 at 41:18-25, ECF No. 21. One would expect Plaintiff to disclaim rather than embrace a potential avenue for removal.

[7] Defendant did not include the entire Report as an Exhibit. ECF No. 1-10. The Court cites to ECF No. 1-10 as "Report" when information is available therein. Where information contained in the Inventory Report is not in ECF No. 1-10, the Court cites to the original report as "1962 Inventory Report."

States, both BLM holdings in Lea and Eddy County, as well as the Jornada Range have been determined to constitute federal enclaves."); Resp. at 5, ECF No. 13 (". . . occurring on a federal enclave (i.e. BLM Leased land)."); Resp. at 22, ECF No. 13.

Plaintiff argues that Defendant does not meet its burden of proving the land is a federal enclave and does not establish as required that all pertinent events took place on an enclave. Mot. at 18, ECF No. 11; *Bd. of Cnty. Comm'rs of Boulder Cnty.*, 25 F.4th at 1271 (citation omitted) ("The doctrine of federal enclave jurisdiction generally requires 'that all pertinent events t[ake] place on a federal enclave.'"); Tr. of Hr'g of Jan. 23, 2026 at 41:10-17, ECF No. 21 (asserting events may have occurred on federal land but did not occur on a federal enclave). Defendant's own submissions confirm the lands are not federal enclaves. Therefore, federal jurisdiction based on the status of the land does not exist and the case shall be remanded accordingly. The Court does not need to address the ramifications of where events occurred.

Land owned by the federal government is subject to varying degrees of federal legislative jurisdiction.[8]

> Legislative jurisdiction over federal land can be categorized into four types: (1) exclusive federal jurisdiction, in which only those state laws already existing at the time the state surrendered authority remain in effect on the land (such land is sometimes referred to as a "federal enclave"); (2) partial jurisdiction, in which the federal government exercises exclusive authority but for within certain enumerated issue areas retained by the state (commonly, jurisdiction to serve process and/or impose taxes); (3) concurrent jurisdiction, in which the state and federal governments share legislative authority and state laws govern unless preempted by federal law pursuant to the Supremacy Clause, U.S. Const. art. IV, cl. 2; and (4) proprietorial jurisdiction, in which the federal government exercises no legislative power at all.

*U.S. ex rel. A Mountain Constr., Inc. v. CHP Sols., LLC*, 787 F. Supp. 3d 1216, 1224-25 (D.N.M.

---

[8] Legislative jurisdiction involves the authority of a government (state or federal) to make its laws applicable to persons or activities, whereas judicial (or adjudicative) jurisdiction involves the power of a government to resolve a particular dispute through its court system. *Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429, 435 (4th Cir. 1999).

2025) (citing *James Stewart & Co. v. Sadrakula*, 309 U.S. 94 (1940); *Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518 (1938); *North Dakota v. United States*, 495 U.S. 423 (1990); and *Paul v. United States*, 371 U.S. 245 (1963)).

Federal enclave doctrine is the "choice of law doctrine" that determines which of the four categories of legislative jurisdiction apply. *See Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012). "The central principle of federal enclave doctrine is that Congress has exclusive legislative authority over these enclaves." *Id.* at 1237. Thus, if federal jurisdiction over the land in question is not exclusive, it is not a federal enclave. *See id.* As examples, "[federal] enclaves include numerous military bases, federal facilities, and even some national forests and parks." *Id.* at 1235.

The purpose of the Report submitted by Defendant was to compile "an inventory of the legislative jurisdiction over Federal areas within the States, as of June 30, 1962." Rep. at 13, ECF No. 1-10. The Report applies one of five codes to each area according to the type of legislative jurisdiction applicable to the area. *Id.* at 6, 18. Codes 1 through 4 correspond to categories 1, 3, 2, and 4 in *CHP Sols., LLC*. 787 F. Supp. 3d at 1224-25.

Code 1 is "Exclusive Legislative Jurisdiction," meaning

the Federal Government possess, by whichever method acquired, all of the authority of the State, and in which the State concerned has not reserved to itself the right to exercise any of the authority concurrently with the United States except the right to serve civil or criminal process in the area for activities which occurred outside the area.

Rep. at 18, ECF No. 1-10. Code 1 is synonymous with federal enclaves. *See Allison*, 689 F.3d at 1237. The remaining codes are not. *See id.*

Code 2 is "Concurrent Legislative Jurisdiction," wherein "in granting to the United States authority which would otherwise amount to exclusive legislative jurisdiction over an area, the State concerned has reserved to itself the right to exercise, concurrently with the United States, all of the

24

same authority." Rep. at 18, ECF No. 1-10. Code 3 is "Partial Legislative Jurisdiction" wherein the State has granted the Federal Government "certain of the State's authority, but where the State has reserved . . . other authority constituting more than merely the right to serve civil or criminal process in the area (e.g., the right to tax private property)." *Id.* Code 4 is "Proprietorial Interest Only" wherein "the Federal Government has acquired some right or title to an area in a State, but has not obtained any measure of the State's authority over the area." *Id.* Code 4 is the least possible amount of federal jurisdiction over federally owned land. Code 5 is "Unknown." *Id.*

The report lists dozens of tracts of federal land within New Mexico and applies "Jurisdictional Status" Codes to those tracts. *Id.* at 25-36. Code 1 areas, federal enclaves, within New Mexico include federal buildings like Post Offices and military facilities like Kirtland Air Force Base. *Id.* at 26. Jornada Range is Code 4, Proprietorial Interest Only, meaning jurisdiction in the area is not exclusive to the federal government. *Id.* at 28. Jornada Range is not a federal enclave per Defendant's evidence.

As to the BLM land in Eddy and Lea Counties, the Report shows BLM land exists in 31 New Mexico counties, including Eddy and Lea, but does not associate a jurisdictional code with them in the portion of the Report Defendant submitted as an Exhibit. *Id.* at 37-38. In a portion not included by Defendant, however, the Report lists the total BLM acreage in New Mexico under Exclusive, Concurrent, Partial, Proprietorial, and Unknown Jurisdiction. Gen. Serv. Admin., Inventory Rep. on Jurisdictional Status of Fed. Areas Within the States as of June, 1962 at 914 (1964). All 14,316,068 acres of Bureau of Land Management land in New Mexico, including BLM land within Eddy and Lea Counties, is under Proprietorial Jurisdiction. *Id.* BLM lands in Eddy and Lea Counties are not federal enclaves per Defendant's submitted evidence.

In summary, there is no indication in the materials submitted and cited to by Defendant

25

that any of the land in question is under exclusive federal jurisdiction as a federal enclave.

These distinctions also refute Defendant's assertion that this case is similar to *Akin* because both occurred on federal enclaves. Resp. at 9, ECF No. 13. *Akin* occurred on Tinker Air Force Base, which is a federal enclave, *Akin*, 156 F.3d at 1034 ("There is no dispute that Tinker Air [F]orce Base at Oklahoma City, Oklahoma is such a federal enclave."); these lands, conversely, are not.[9]

The evidence submitted by Defendant purporting to establish the lands at issue are federal enclaves instead establishes the lands are not federal enclaves. The Court finds it does not have federal enclave jurisdiction and remands the case back to state court.

**D. Plaintiff is not entitled to costs and attorney's fees associated with the removal because removal based on federal question jurisdiction was objectively reasonable.**

Plaintiff argues she is entitled to costs and attorney's fees pursuant to 28 U.S.C. § 1447(c). Mot. at 21-22, ECF No. 11. She contends an award is merited because (1) the "removal lacks an objectively reasonable basis" and (2) improper removal is "causing undue delay." *Id.* at 22. Defendant opposes a fee award. *See generally* Resp. at 25-26, ECF No. 13.[10]

---

[9]   Defendant also incorrectly asserts that "[m]ost of the cases in this jurisdiction involve firmly established federal enclaves," presumably referring to the vast amount of federally owned land in New Mexico, and citing to *Allison* and *Celli v. Shoell*, 40 F.3d 324 (10th Cir. 1994). Resp. at 23, ECF No. 13. *Allison* took place on Kirtland Air Force Base. 689 F.3d at 1236. *Celli* took place on Hill Air Force Base in Utah. 40 F.3d at 326. Defendant apparently fails to grasp that, when comparing this case to *Allison*, *Celli*, and *Akin*, one of these things is not like the others.

[10]   The Response exceeded the page limit permitted by this Court's local rules. D.N.M.LR-Civ. 7.5 ("A response must not exceed twenty-four (24) double-spaced pages."). Defendant's argument in opposition to an award under 28 U.S.C. § 1447(c) will not be substantively considered by the Court because it is on the pages exceeding the limits imposed by Local Rule 7.5, a request for leave to exceed the page limit was never made, and Defendant has not acknowledged its failure to comply with Local Rule 7.5. *Cf. Chavez v. Bd. of Cnty. Comm'rs of Sierra Cnty.*, No. CIV 11-1008 JB/LAM, 2012 WL 2175776, at *7 (D.N.M. May 30, 2012) (granting a motion for leave to file amended response when the party who failed to comply with Local Rule 7.5 acknowledged his failure and sought to cure his non-compliance). It is assumed an award of fees and costs is opposed.

The grant of a fee award is subject to review under an abuse of discretion standard, while the underlying legal analysis of the award is reviewed de novo. *Topeka Hous. Auth. v. Johnson*, 404 F.3d 1245, 1248 (10th Cir. 2005). The party seeking a fee award must show "that the removal was improper *ab initio*" but need not show bad faith. *Id.* (quoting *Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir. 1997)). "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). There is no presumption to award fees or not to award them. *Id.* at 137-40. An untimely removal, if objectively unreasonable, "may give rise to an award of fees and costs under § 1447(c)." *Garrett v. Cook*, 652 F.3d 1249, 1254 (10th Cir. 2011).

Defendant's opportunity for removal was not triggered clearly and unequivocally by Plaintiff's First Amended Complaint, therefore Defendant's time to remove did not toll until Defendant could ascertain grounds for removal from "other paper." *Akin*, 156 F.3d at 1035-36. Plaintiff's February 24, 2025, answer to Defendant's interrogatory no. 37 provided such reasonable grounds.

In the answer, Plaintiff cites to federal regulations that Plaintiff stated would (1) "evidence an agency relationship between" ACC and its independent contractors, (2) render ACC "strictly liable for all injuries occurring on the property ACC acquired from the federal government," and (3) establish that "anyone using the property ACC acquired from the federal government is ACC's agent." ECF No. 1-4 at 4. Although New Mexico law does not require an agency relationship to establish liability and the federal regulations in question may not themselves have required interpretation to establish an agency relationship if one were required under New Mexico law, *see supra* III.A, and Plaintiff was entirely wrong about the second two claims, *see supra* III.B,

27

Plaintiff's answer could be reasonably interpreted as raising a potentially substantive question of federal law.

As federal question jurisdiction was therefore an objectively reasonable basis on which to pursue removal and Defendants removal was timely, no fees are warranted. *See Garrett*, 652 F.3d at 1254; *Trujillo v. Valero Energy Corp.*, No. CIV. 05-1334 RB/LAM, 2006 WL 8444089, at *3-4 (D.N.M. July 27, 2006).

Because there was at least one objectively reasonable basis for removal, the Court denies Plaintiff's request for attorney's fees and costs under 28 U.S.C. § 1447(c).

## IV.    CONCLUSION

After considering the Parties' arguments, the record, and relevant law, for the foregoing reasons Plaintiff Jessica Adams' Motion to Remand, ECF No. 11, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

IT IS ORDERED this matter be **REMANDED** to the First Judicial District Court of Santa Fe County, New Mexico.

IT IS FURTHER ORDERED the Clerk of the Court **SHALL** mail to the clerk of the First Judicial District Court of Santa Fe County, New Mexico, a certified copy of this order of remand pursuant to 28 U.S.C. § 1447(c).

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

28